IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DAVID M. DAVIS,

      Plaintiff,      3:14-cv-00271-PK

v.                FINDINGS AND
                RECOMMENDATION

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

      Defendant.

PAPAK, Magistrate Judge:

   Plaintiff David M. Davis filed this action on September 11, 2014, seeking judicial review of the Commissioner of Social Security's ("Commissioner") final decision denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI")

Page 1 - FINDINGS AND RECOMMENDATION

under Titles II and XVI of the Social Security Act ("the Act"). This court has jurisdiction over the matter pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

Davis argues that the Administrative Law Judge (ALJ) erroneously rejected medical evidence provided by an independent medical examiner and state agency reviewing psychologists, therefore rendering the Commissioner's final decision contrary to law and unsupported by substantial evidence. I have considered the parties' briefs and all of the evidence in the administrative record. For the reasons set forth below, the Commissioner's final decision should be reversed and this case should be remanded for further proceedings.

## PROCEDURAL BACKGROUND

Davis protectively applied for SSI and DIB on March 29, 2010, alleging a disability onset date of September 20, 2009. After his application was denied initially and upon reconsideration, Davis requested a hearing before an ALJ. On July 24, 2012, ALJ Dan Hyatt held a hearing. Davis was represented by counsel at the hearing. On August 22, 2012, the ALJ issued a decision finding Davis not disabled within the meaning of the Act. After the Appeals Council denied review on December 17, 2013, Davis filed a complaint in this court.

## DISABILITY ANALYSIS FRAMEWORK

To establish disability within the meaning of the Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner has established a five-step sequential process for determining whether a claimant has made the requisite demonstration. *See Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); *see also* 20 C.F.R. § 416.920(a)(4). At the first

Page 2 - FINDINGS AND RECOMMENDATION

four steps of the process, the burden of proof is on the claimant; only at the fifth and final step does the burden of proof shift to the Commissioner. *See Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the ALJ considers the claimant's work activity, if any. *See Bowen*, 482 U.S. at 140; *see also* 20 C.F.R. § 416.920(a)(4)(i). If the ALJ finds that the claimant is engaged in substantial gainful activity, the claimant will be found not disabled. *See Bowen*, 482 U.S. at 140; *see also* 20 C.F.R. §§ 416.920(a)(4)(i), 416.920(b). Otherwise, the evaluation will proceed to the second step.

At the second step, the ALJ considers the medical severity of the claimant's impairments. *See Bowen*, 482 U.S. at 140-41; *see also* 20 C.F.R. § 416.920(a)(4)(ii). An impairment is "severe" if it significantly limits the claimant's ability to perform basic work activities and is expected to persist for a period of twelve months or longer. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. § 416.920(c). The ability to perform basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b); *see also Bowen*, 482 U.S. at 141. If the ALJ finds that the claimant's impairments are not severe or do not meet the duration requirement, the claimant will be found not disabled. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 416.920(a)(4)(ii), 416.920(c). Nevertheless, it is well established that "the step-two inquiry is a *de minimis* screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing *Bowen*, 482 U.S. at 153-54). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual[']s ability to work." *Id.* (quoting SSR No. 85-28).

Page 3 - FINDINGS AND RECOMMENDATION

If the claimant's impairments are severe, the evaluation will proceed to the third step, at which the ALJ determines whether the claimant's impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d). If the claimant's impairments are equivalent to one of the impairments enumerated in 20 C.F.R. § 404, subpt. P, app. 1, the claimant will conclusively be found disabled. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d).

If the claimant's impairments are not equivalent to one of the enumerated impairments, between the third and the fourth steps the ALJ is required to assess the claimant's residual functional capacity (RFC), based on all of the relevant medical and other evidence in the claimant's case record. *See* 20 C.F.R. § 416.920(e). The RFC is an estimate of the claimant's capacity to perform sustained, work-related physical and/or mental activities on a regular and continuing basis,[1] despite the limitations imposed by the claimant's impairments. *See* 20 C.F.R. § 416.945(a); *see also* SSR No. 96-8p.

At the fourth step of the evaluation process, the ALJ considers the RFC in relation to the claimant's past relevant work. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. § 416.920(a)(4). If, in light of the claimant's RFC, the ALJ determines that the claimant can still perform his or her past relevant work, the claimant will be found not disabled. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 416.920(a)(4)(iv), 416.920(f). In the event the claimant is no longer capable of performing his or her past relevant work, the evaluation will proceed to the fifth and final step, at

---

[1] "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR No. 96-8p.

Page 4 - FINDINGS AND RECOMMENDATION

which the burden of proof shifts, for the first time, to the Commissioner.

At the fifth step of the evaluation process, the ALJ considers the RFC in relation to the claimant's age, education, and work experience to determine whether a person with those characteristics and RFC could perform any jobs that exist in significant numbers in the national economy. *See Bowen*, 482 U.S. at 142; *see also* 20 C.F.R. §§ 416.920(a)(4)(v), 416.920(g), 416.960(c), 416.966. If the Commissioner meets her burden to demonstrate the existence in significant numbers in the national economy of jobs capable of being performed by a person with the RFC assessed by the ALJ between the third and fourth steps of the five-step process, the claimant is found not to be disabled. *See Bowen*, 482 U.S. at 142; *see also* 20 C.F.R. §§ 416.920(a)(4)(v), 416.920(g), 416.960(c), 416.966. A claimant will be found entitled to benefits if the Commissioner fails to meet that burden at the fifth step. *See Bowen*, 482 U.S. at 142; *see also* 20 C.F.R. §§ 416.920(a)(4)(v), 416.920(g).

## SUMMARY OF ADMINISTRATIVE RECORD

Davis was born on March 21, 1961. Tr. 163.[2] Davis filed for SSI and DIB based on diagnosed HIV, bipolar disorder, anxiety, depression, schizophrenia, osteoarthritis, chronic fatigue, pain, nausea, vomiting, memory loss, diarrhea, and shortness of breath. Tr. 188. Davis is a high school graduate and he completed a program to become a respiratory therapist and subsequently graduated from culinary school. Tr. 190. He worked as a respiratory therapist from 1982–93, a mold injection technician for a plastic part manufacturer from 1998–99, a cook and restaurant manager from 2000–07, and an assistant convenience store manager from 2007–09.

---

[2] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record filed herein as docket no. 10.

Page 5 - FINDINGS AND RECOMMENDATION

*Id.*; Tr. 38.

At the hearing before the ALJ, Davis testified that he takes two forms of medication to treat his HIV and five medications for various symptoms and conditions. Tr. 36–37. Davis also testified that he left his position as a convenience store manager in 2009 because he "started losing days from work from being sick and [his] job performance was getting worse . . . [a]nd then [Davis's boss] just took [him] off" the schedule. Tr. 35. Davis has not searched for employment since that time. *Id.*

On April 8, 2010, Davis sought treatment from Dr. Douglas Beers regarding medication management for depression and anxiety. Tr. 318. Dr. Beers noted that Davis's mental health was complicated by a history of longstanding methamphetamine use. *Id.* An MRI of Davis's brain, performed that same month, revealed normal findings. Tr. 336.

On September 27, 2010, Davis presented to Dr. Kehrli, a state agency medical evaluator with the Disability Determination Services (DDS). Tr. 49. After a case file examination, Dr. Kehrli concluded that Davis maintains the ability to carry out simple 1 to 2 step instructions but had moderate limitations in his ability to interact appropriately with the general public and should have only occasional direct public and co-worker contact. Tr. 56. Dr. Kerhli further concluded that Davis did not have any severe physical impairments. Tr. 58. Dr. Kerhli's assessments were later reaffirmed upon reconsideration by DDS Dr. Bill Hennings. Tr. 81.

On September 15, 2010, Davis underwent a consultative psychological examination by Dr. Kay Dieter. Tr. 340. Dr. Dieter diagnosed Davis with bipolar disorder, posttraumatic stress disorder, and obsessive compulsive traits, and assessed Davis with a GAF score of 60 to 70, indicating Davis had mild symptoms or some difficulty in social, occupational, or school

functioning, but "generally functioning pretty well, with some meaningful interpersonal relationships." Tr. 21, 344–45. Dr. Dieter assessed Davis's functioning capacity to include simple and repetitive tasks, but he would have more difficulty with detailed tasks, and his ability to interact with co-workers, supervisors, and the public, and his ability to tolerate stress in the work environment was limited. Tr. 345.

On September 20, 2011, Davis provided a behavioral health assessment when seeking treatment and an evaluation of his mental health. Tr. 565. Davis reported that "I know something is not right. I'm working and I can't function, I can't do my job like I have for years." *Id.* Davis reported that he was a victim of unwanted sexual experiences, crime, and violence. Tr. 566.

On October 24, 2011, Davis underwent a clinical psychiatric evaluation with Dr. Marvin Fickle, during which he reported that he used approximately two grams of marijuana per day for the year preceding his visit, but did not suffer any significant loss of memory or development of cognitive problems. Tr. 550.

At the July 24, 2012, hearing before the ALJ, Davis testified that he is unable to work due to memory problems, difficulty with focusing, and fatigue, and that he requires assistance to perform basic activities of daily living such as shopping, housework, and tasks related to personal hygiene. Tr. 23. In contrast, as the ALJ notes, Davis had noted at the time of filing that he shops in stores, goes to the park, prepares simple meals, performs light housework-related tasks, reads, watches television, showers and performs personal care and grooming tasks, speaks on the phone with friends and family, visits with friends, and uses public transportation. Tr. 215–21, 340–42.

Page 7 - FINDINGS AND RECOMMENDATION

At the hearing, the ALJ noted that Davis has physical and mental impairments that result in some limitations on his work activity, but that the evidence does not show that those impairments preclude him from engaging in all basic work activity as Davis alleged. Tr. 20. The ALJ found that Davis has the ability to perform a full range of work at all exertional levels but with several nonexertional limitations: (1) Davis is limited to simple, repetitive tasks; (2) Davis should have no contact with the general public; and (3) Davis is limited to both sitting and standing for six hours total out of an eight-hour working day, and walking for six hours out of an eight-hour working day. *Id.*

The ALJ asked vocational expert ("VE") Robert Gaffney to consider an individual of Davis's age, education, and work experience, who "is limited to simple and repetitive tasks and no contact with the public" and then asked the VE whether "that hypothetical person [could] perform [Davis's] past work?" Tr. 46. The VE stated such limitations "would be consistent with the small products assembled [sic] job."[3] *Id.* The ALJ relied on the VE's opinion in finding that Davis is able to perform his past relevant work as a Small Products Assembler (DOT #706.684-010), which is a light SVP job,[4] as actually and generally performed. Tr. 23.

Davis now contends that the ALJ's treatment of Dr. Dieter's opinion and the DDS

---

[3] I note that, in interpreting Davis's past relevant work history, the VE found Davis's prior mold injection technician position to be approximately equivalent in skill and work requirement to a small products assembler position. Tr. 46.

[4] "SVP" indicates the level of "specific vocational performance" necessary to perform specific jobs. This metric is defined as "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." *Davis v. Astrue*, 2011 WL 6152870, at n.7 (D. Or. Dec. 7, 2011). Jobs with SVPs between 1 and 2 are classified as "unskilled." *Whitney v. Astrue*, 2012 WL 712985, at *3 (D. Or. Mar. 1, 2012).

Page 8 - FINDINGS AND RECOMMENDATION

opinions provided by Dr. Kerhli and Dr. Hennings was improper and that the finding that Davis can perform his past relevant work is erroneous.

## SUMMARY OF ALJ FINDINGS

At the first step of the five-step sequential evaluation process, the ALJ found that Davis had not engaged in substantial gainful activity since the alleged onset date. Tr. 18. At the second step, the ALJ found that Davis had the following severe impairments: bipolar disorder, anxiety disorder, and mild cognitive problems. *Id.* The ALJ additionally noted that Davis is HIV positive, but found that to be a non-severe impairment because Davis had been on antiretroviral medications. *Id.* Because Davis's impairments were deemed severe, the ALJ properly proceeded to the third step of the analysis. *Id.*

At the third step, the ALJ found that none of Davis's impairments met or equaled any of the impairments enumerated in 20 C.F.R. § 404, subpt. P, app. 1. Tr. 12. The ALJ therefore conducted an assessment of Davis's RFC and found that Davis had:

> The residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: (1) the claimant is limited to simple, repetitive tasks; (2) the claimant should have no contact with the general public; and (3) the claimant is limited to sitting for 6 hours total out of an 8-hour working day, standing for 6 hours total out of an 8-hour working day, and walking for 6 hours total out of an 8-hour working day.

Tr. 20.

At the fourth step of the five-step process, the ALJ found that Davis was capable of performing his past relevant work as a small products assembler. Tr. 23. As a result of that finding, the five-step analysis concluded at step four and the ALJ determined that Davis was not under a disability as defined by the Act. *Id.*

Page 9 - FINDINGS AND RECOMMENDATION

## LEGAL STANDARD

A reviewing court must affirm an ALJ's decision if the ALJ applied proper legal standards and his or her findings are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *see also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)).

The court must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Id.* (quoting *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998)). The court may not substitute its judgment for that of the Commissioner. *See id.* (citing *Robbins*, 466 F.3d at 882); *see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Moreover, the court may not rely upon its own independent findings of fact in determining whether the ALJ's findings are supported by substantial evidence of record. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)). If the ALJ's interpretation of the evidence is rational, it is immaterial that the evidence may be "susceptible [of] more than one rational interpretation." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (citing *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984)).

///

///

///

Page 10 - FINDINGS AND RECOMMENDATION

## ANALYSIS

Davis argues that the ALJ erred because he (1) improperly ignored limitations recommended by Dr. Kay Dieter, a psychological consultative examiner, in formulating his RFC; and (2) improperly failed to adopt material limitations recommended by Dr. Kehrli and Hennings of DDS. I will analyze these arguments separately.

### A.  Limitations Recommended by Dr. Dieter

Davis first argues that the ALJ, in formulating his RFC, failed to adequately account for the social limitations and stress tolerance identified in Dr. Dieter's opinion. Pl.'s Br., #12, 5. Dr. Dieter assessed Davis as having the following functional capacity:

> [C]apable of simple and repetitive tasks, but would have more difficulty with detailed tasks. Likely, his ability to interact with coworkers, supervisors, and the public, as well as tolerate stress in the work environment may be limited as well, given his psychiatric issues and his HIV, and his mild cognitive problems.

Tr. 345.

The ALJ determines a claimant's RFC at step four of the sequential evaluation process. 20 C.F.R. § 404.1545. In determining an RFC, the ALJ considers "all the relevant evidence in [the] case record." 20 C.F.R. § 404.1545(a)(1). This includes all of a claimant's "medically determinable impairments of which [the ALJ is] aware, including [the claimant's] medically determinable impairments that are not 'severe.'" 20 C.F.R. § 404.1545(a)(2). In addition, the ALJ considers "descriptions and observations of [the claimant's] limitations from [his or her] impairment(s), including limitations that result from [the claimant's] symptoms, such as pain, provided by [the claimant]." 20 C.F.R. § 404.1545(a)(3). As such, "an RFC that fails to take into account a claimant's limitations is defective." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574

F.3d 685, 690 (9th Cir. 2009).

As a preliminary matter, I note that the ALJ assigned substantial weight to Dr. Dieter's opinion based on a number of factors, discussed below. Tr. 21. Davis contends, however, that the ALJ's RFC determination "only limited Plaintiff's ability to interact with the general public, and failed to mention interaction with supervisors or coworkers or any limitations on workplace stressors." Pl.'s Br., #12, 5. Davis argues that the ALJ's failure to include Dr. Dieter's mental limitation findings requires remand "for further discussion of [Dr. Dieter's] opinion and potentially additional vocational testimony to explore the impact these limitations may have on Plaintiff's ability to perform full-time work." Pl.'s Br., #12, 5.

The potential mental and social limitations identified by Dr. Dieter are relevant to the assessment of Davis's RFC and whether he is able to carry out past relevant work. SSR 85-15. Social Security Ruling 85-15 directly addresses this issue, noting that inabilities to respond appropriately to supervision, co-workers, and work pressures may severely limit the potential occupational base and ability to do past and other work. *Id.*; 20 C.F.R. 404.1545(c). Davis seizes upon the fact that "Dr. Dieter specifically mentioned social limitations and stress tolerance in her discussion of Plaintiff's abilities," and that the ALJ, despite assigning substantial weight to Dr. Dieter's opinion, failed to account for those limitations. Pl.'s Br., #12, 7.

In response, the Commissioner argues (1) that Davis forfeited this issue by not raising it at the hearing; and (2) that Davis bears the burden of showing the ALJ erred in weighing Dr. Dieter's opinion and has not done so. In furtherance of her second argument, the Commissioner highlights the fact that Dr. Dieter merely stated that Davis "may be limited" in terms of social and mental impairments. Def.'s Br., #13, 4–5. I disagree with the Commissioner on both points.

Page 12 - FINDINGS AND RECOMMENDATION

First, the Commissioner takes issue with the fact that, at the hearing, Davis's counsel "had the opportunity to cross-examine the vocational expert, but he did not ask the expert whether the small products assembler job required significant interaction with coworkers and supervisors or whether any limitation on the ability to tolerate stress would preclude performing the job." *Id.* (citing Tr. 47–48). The Commissioner cites to *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999), to support the notion that issues must be raised at the hearing in order to be preserved on appeal. In response, Davis accurately distinguishes the facts of *Meanel* from the instant case. The court in *Meanel* did, in fact, hold that "appellants must raise issues at their administrative hearings in order to preserve them on appeal before" the Ninth Circuit. *Meanel*, 172 F.3d at 1115, citing *Avol v. Secretary of Health & Human Serv.*, 883 F.2d 659, 660 (9th Cir. 1989). However, the court did so only in response to the plaintiff's attempt to admit new statistics to show that there was a shortage of certain jobs in her area, thus contradicting opinions indicating that she could perform those jobs. *Id.* at 1115. I find *Meanel's* exhaustion preservation holding inapplicable to the present case. Here, Davis simply argues that the ALJ erred in constructing his hypothetical for the VE and failed to completely account for mental and social limitations described in a medical opinion to which the ALJ assigned substantial weight in an opinion produced only *after* the hearing. The Commissioner's argument logically fails.[5]

---

[5] Although I find that *Meanel's* exhaustion requirement is inapplicable to Davis's failure to question the VE as to the omitted limitations, I note a trend in the Ninth Circuit encouraging claimants to explore omitted issues and information beyond simply presenting evidence, per *Meanel's* preservation requirement. 172 F.3d at 1115. Where a claimant observes omissions or inconsistencies in testimony at the administrative hearing, counsel should elicit clarifying testimony at that time. *See Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 527 (9th Cir. 2014).

Page 13 - FINDINGS AND RECOMMENDATION

Second, the Commissioner generally argues that the ALJ did not err in considering Dr. Dieter's opinion because it is not clearly inconsistent with the ALJ's findings and does not contain specific limitations. Def.'s Br., #13, 4–5. I disagree on both accounts. As the ALJ notes in his opinion, "Dr. Dieter opined that the claimant would be capable of simple and repetitive tasks . . . and *the claimant's ability to interact with co-workers, supervisors*, and the public, *and his ability to tolerate stress in the work environment was limited*." Tr. 21 (emphases added). Nonetheless, the ALJ's residual functional capacity assessment accounted only for Davis's limited ability to perform simple repetitive tasks and his inability to interact with the public. *Id.* The ALJ clearly noted that he reviewed Dr. Dieter's opinion and gave "it substantial weight based on supportability with medical signs and laboratory findings, consistence with the record, and area of specialization." Tr. 20, 21. Despite omitting relevant limitations from Dr. Dieter's findings, the ALJ nonetheless concluded that "the residual functional capacity outlined above is generally consistent with [Dr. Dieter's] opinion." *Id.*

Further, I disagree with the Commissioner's argument that "Dr. Dieter's opinion did not contain any specific limitations that the ALJ failed to accommodate . . . ." Def.'s Br., #13, 5. While Dr. Dieter did use somewhat ambiguous wording describing Davis's stress tolerance, particularly in her use of "likely" and "may be" when describing Davis's limitations, I look to the ALJ's substantial weight assignment to that opinion and, more importantly, the fact that the ALJ unequivocally states that "Dr. Dieter opined that . . . the claimant's ability to interact with co-workers, supervisors, . . . and [his] ability to tolerate stress in the work environment was limited." Tr. 21. Contrary to the Commissioner's stance, then, the ALJ acknowledged specific limitations offered by Dr. Dieter's substantially weighted opinion yet nonetheless failed to include those in

Page 14 - FINDINGS AND RECOMMENDATION

his RFC without explanation. This constitutes error, the significance of which will be discussed below.

### B. Limitations Recommended by the DDS Doctors

Davis next argues, on similar grounds, that the ALJ's failure to account for the limitations assessed by DDS doctors Kehrli and Hennings was erroneous. Pl.'s Br. #12, 7. As with the limitations contained in Dr. Dieter's credited opinion, omission of these findings potentially impacts the occupational base and number of jobs available when issuing step four and step five determinations. SSR 85-15.

The specific limitations ignored by the ALJ in providing a hypothetical to the VE and making his RFC determination were that Davis should have only occasional direct co-worker contact and that Davis was limited to remembering and understanding simple 1-2 step instructions. Tr. 56. In contrast, the ALJ's RFC included an assessment that Davis could have no public contact and was limited to simple, repetitive tasks. Tr. 20.

The Commissioner argues that the ALJ's omission of these two limitations should be considered harmless error because "[t]he ALJ . . . meets his obligation to weigh the medical opinions by setting out a detailed and thorough summary of the medical evidence, stating his interpretation of it, and making findings." Def.'s Br., #13, 7 (citing *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989)). The Commissioner extends this reasoning to argue that, because the ALJ based his opinion on Dr. Dieter's opinion, the ALJ reasonably weighed the evidence and properly assessed Davis's limitations. *Id.* I disagree, as I find the same inconsistencies in the ALJ's treatment of Dr. Dieter's medical opinion undermine his treatment of the DDS opinion.

The ALJ accorded substantial weight to both the opinion of Dr. Dieter and the DDS

Page 15 - FINDINGS AND RECOMMENDATION

opinion. Tr. 21–21. In explaining his weight assignments, the ALJ does not provide any detailed explanation of his rejection of specific limitations from those opinions, nor does he cite any conflict in the clinical evidence of record. *See Magallanes*, 881 F.2d at 755. While the ALJ need not recite any "magic words," he must provide specific and legitimate reasons based on substantial evidence in the record in order to reject certain limitations, even those found in ostensibly credited opinions, as here. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) (quoting *Magallanes*, 881 F.2d at 751) (internal quotation marks omitted).

### C. The ALJ's Determination of Davis's Residual Functional Capacity Erroneously Ignores Certain Limitations from the Medical Evidence of Record

"An ALJ is not free to disregard properly supported limitations." *Robbins v. Social Sec. Admin.*, 466 F.3d 880, 885–86 (9th Cir. 2006). The ALJ's failure to account for those additional limitations described in Dr. Dieter's opinion and the DDS opinion cuts against the validity of his determination of Davis's RFC. The hypothetical posed by the ALJ to the VE was therefore legally inadequate, as it failed to include potentially determinative limitations. *See Osenbrock v. Apfel*, 240 F.3d 1157, 1163–65 (9th Cir.2001). This failure is not harmless because, if the ignored limitations had been cited and credited, a proper hypothetical would have included potentially determinative limitations, and the VE's response to that hypothetical may have been different. *See Robbins*, 466 F.3d 880, at 886.

Because the hypothetical posed to the VE does not reflect all of the Davis's medically supported limitations, the VE's opinion lacks evidentiary value. *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993). The VE's testimony, therefore, was not informed by Davis's limitation identified by Dr. Dieter regarding co-worker, supervisory, and work place stressors, nor did it

Page 16 - FINDINGS AND RECOMMENDATION

include the limitation to only occasional co-worker contact or the 2-step maximum assessed by Dr. Kehrli and affirmed by Dr. Hennings. *See* Tr. 45–48.

The ALJ relied on the VE's testimony to conclude that the Commissioner had met its burden at step four of showing that Davis can perform his past relevant work. Tr. 23. Because the ALJ's conclusion relied on a VE opinion that lacked evidentiary value, the ALJ's finding was not supported by substantial evidence and is therefore erroneous. *See Osenbrock*, 240 F.3d at 1163 ("An ALJ must propose a hypothetical that is based on medical assumptions supported by substantial evidence in the record that reflects each of the claimant's limitations.").

## D. Remand for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." *Smolen*, 80 F.3d at 1292. Generally, when an ALJ's decision is reversed, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." *Id.*

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." *Smolen*, 80 F.3d at 1292; *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be

Page 17 - FINDINGS AND RECOMMENDATION

>   made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen*, 80 F.3d 1273 at 1292; *McCartey v. Massanari*, 298 F.3d 1072, 1076–77 (9th Cir. 2002). Because issues remain regarding Davis's properly calculated RFC and whether that RFC would foreclose upon Davis performing his past relevant work or other jobs existing in significant numbers in the national economy, remand for further consideration of those issues is warranted.

## CONCLUSION

For the foregoing reasons, the Commissioner's final decision denying Davis's application for disability insurance benefits and social security insurance should be reversed and the case should be remanded for further proceedings consistent with this opinion.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

## NOTICE

A party's failure to timely file objections to any of these findings will be considered a waiver of that party's right to de novo consideration of the factual issues addressed herein and

///

///

Page 18 - FINDINGS AND RECOMMENDATION

will constitute a waiver of the party's right to review of the findings of fact in any order or judgment entered by a district judge. These Findings and Recommendation are not immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment.

Dated this 19th day of March, 2015.

/s/ Paul Papak
Honorable Paul Papak
United States Magistrate Judge